UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW JOHN PARIS,

    Plaintiff,

v.                                                  Case No. 13-11301
                                                  HON. AVERN COHN

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

## MEMORANDUM AND ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 34) AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. 31)

### I. INTRODUCTION

This is a social security case. Plaintiff Andrew John Paris (Plaintiff) appeals from the final decision of the Acting Commissioner of Social Security (Commissioner) denying his application for Social Security Disability Benefits. Plaintiff claims disability since September 10, 2009, due to diabetes mellitus, sleep apnea, hypertension, coronary artery disease, obesity, and asthma. (Tr. at 25)

The parties filed cross motions for summary judgment. (Docs. 31, 34) The motions were referred to a magistrate judge (MJ) for a report and recommendation (R&R). (Doc. 39) The MJ recommends the Court deny Plaintiff's motion for summary judgment and grant the Commissioner's motion.

Now before the Court is Plaintiff's Objection to the R&R. (Doc. 47) For the following reasons, the Court will adopt the R&R as the findings and conclusions of the Court, as supplemented herein. The Commissioner's Motion for Summary Judgment

(Doc. 34) is GRANTED and Plaintiff's Motion for Summary Judgment (Doc. 31) is DENIED.

## II. BACKGROUND

### A. Procedural Background

The R&R sets forth the facts, many of which are repeated here. Plaintiff applied for disability benefits in January 2010, claiming that he was disabled and unable to work since September 10, 2009, at age 63, due to diabetes mellitus, sleep apnea, hypertension, coronary artery disease, obesity, and asthma. (Tr. at 25) The Social Security Administration (SSA) denied Plaintiff's claim. Plaintiff requested a hearing before an administrative law judge (ALJ).

The ALJ found that Plaintiff retained the residual functional capacity (RFC) to return to his past light work as a vocational instructor. However, the ALJ limited Plaintiff to work that did not require him to drive, crawl or climb ladders, ropes or scaffolds, and noted that he could only occasionally balance, stoop, kneel, or crouch. The Appeals Council declined to review the decision. Plaintiff then commenced the instant action for judicial review of the denial of benefits. The parties filed cross motions for summary judgment on the issue of whether the Commissioner's denial of benefits was supported by substantial evidence in the record. The motions were referred to a MJ, who rejected Plaintiff's assertions, found that there was substantial evidence in the record to support the ALJ's decision, and recommended the Court deny Plaintiff's motion for summary judgment and grant the Commissioner's motion.

### B. The Administrative Hearing Testimony

Plaintiff was 64 years old at the time of the administrative hearing. He had been employed during the relevant past as a vocational instructor at Focus Hope, where he taught students drafting and automobile design until September 2009, when he was laid off due to a decline in enrollment. However, he indicated that he was "counting on" returning to work at Focus Hope, and that his manager there would consider rehiring him if enrollment increased. (Tr. at 108)

Regarding his impairments, Plaintiff testified that he has been on insulin for diabetes since 2001, and that he has vision problems due to diabetic retinopathy. He stated that he underwent laser surgery on his right eye but that he is still unable to read small font sizes on a computer screen or drive at night. Plaintiff stated that he could walk for ten minutes before needing to sit down, but that he has experienced increasing numbness due to neuropathy over the past four to five years. Plaintiff stated that he has experienced some fatigue and shortness of breath due to the blockage of a coronary artery, eventually undergoing heart surgery to remove the occlusion. After the procedure, Plaintiff reported feeling much better and being able to breathe normally. Plaintiff testified that, on a normal day, he gets up, eats breakfast, performs on-line banking, goes out for walks, reads, watches television, and enjoys such hobbies as building furniture, making jewelry boxes, and constructing model ships.

A vocational expert (VE) classified Plaintiff's past work as light, skilled activity, which does not require the performance of work-related activities precluded by his RFC limitations. (Tr. at 31) The VE testified that assuming Plaintiff's limitations, an individual could perform work as a vocational instructor—a job which does not require driving,

crawling, or the climbing of ladders, ropes or scaffolds, and requires only occasional balancing, stooping, kneeling, and crouching.

### C. Medical Evidence

The ALJ considered Plaintiff's longitudinal medical history, including the opinions of several medical sources. The relevant opinions, as well as their relative weight given by the ALJ, are summarized below.

Between October 2007 and June 2011, Plaintiff received care for his coronary artery disease from Steven Timmis, M.D. In August 2009, Plaintiff was evaluated for several chronic medical conditions including: coronary atherosclerosis and palpitations with a history of a coronary artery stent; hypertension; high cholesterol; diabetes mellitus; acid reflux; obstructive sleep apnea and COPD; lower extremity edema; and excess weight. (Tr. at 440) The ALJ noted that although Plaintiff required treatment with several stents, by March 2010 Plaintiff reported to Dr. Timmis that he was "able to walk and swim without significant symptoms." (Tr. at 555)

In May 2010, Plaintiff underwent a state consultative examination by Bina Shaw, M.D. Dr. Shaw diagnosed Plaintiff with obesity, hypertension, diabetes mellitus, gastroesophageal reflux disease, hypothyroidism, diabetic retinopathy, sleep apnea, fatty liver disease, and post coronary angioplasty. Dr. Shaw concluded that Plaintiff can only work four to six hours a day; can only work in a sitting position doing non-cognitive work; should only stand intermittently; should avoid heights and machinery and lift no more than ten pounds. The ALJ gave Dr. Shaw's opinion little weight, stating that Dr. Shaw relied too heavily on Plaintiff's subjective complaints, and that the limitations described by Dr. Shaw were not supported by the objective test results in the record.

Between January 2009 and April 2011, Plaintiff received treatment by Alla Sakharova, M.D., an endocrinologist, for treatment of diabetes mellitus. By September 2009, Dr. Sakharova noted that Plaintiff's control of his diabetes had improved. However, Dr. Sakharova also noted that Plaintiff's high cholesterol and blood pressure were not controlled. (Tr. at 380-89)

By January 2011, Plaintiff reported to Dr. Sakharova that he was exercising by swimming or walking three times a week for 30 minutes at a time. (Tr. at 969) Dr. Sakharova reported that Plaintiff's condition was normal upon examination and stated that although his blood pressure was not controlled, his diabetes had improved. (Tr. at 973) Similarly, in April 2011, Plaintiff reported that he was exercising by running, swimming, and walking. Dr. Sakharova again reported that Plaintiff was normal upon examination. (Tr. at 954-58)

In April 2011, Dr. Sakharova opined that Plaintiff could walk one-half block; sit and stand for two hours during an eight-hour work day; require a break every 30 minutes; lift less than ten pounds; occasionally twist and climb stairs; and rarely or never perform other postural maneuvers. Dr. Sakharova said that Plaintiff must be permitted to shift positions, take unscheduled breaks, and elevate his legs, and must avoid exposure to almost all environmental irritants. Finally, Dr. Sakharova stated that Plaintiff would miss four days of work per month due to his impairments (Tr. at 938-40)

The ALJ afforded very little weight to Dr. Sakharova's opinion, stating that Dr. Sakharova "imposes restrictions without basis and it appears that she just adopted [Plaintiff's] subjective complaints." (Tr. at 30) The ALJ stated that, "[f]or example, Dr.

5

Sakharova restricted [Plaintiff] from exposure to all types of pollutants, but [Plaintiff's] pulmonary function study was normal." (*Id.* at 30-31)

## III. DISCUSSION

### A. Standard of Review

Once the Appeals Council concludes there is no reason to alter the ALJ's decision and denies a claimant's request for review, the decision of the ALJ becomes the final administrative decision of the Commissioner. 20 C.F.R. § 416.1484(b)(2). The Court reviews the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). Judicial review under the statute is limited: the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); see also *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a

zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider that record as a whole. *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that the Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006). Further, this Court does not "resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247.

### B. Analysis

Plaintiff advances eight objections to the R&R, each of which is addressed below.

### 1.

First, Plaintiff argues that the Appeals Council denied his Due Process rights by failing to consider new evidence presented after the ALJ hearing. Plaintiff states that after receiving the unfavorable decision from the ALJ on September 9, 2011, Plaintiff submitted the results of an MRI study to be included in his file. The MRI report revealed multilevel degenerative disc changes and facet osteoarthropathy, as well as severe neural foraminal narrowing with a diffuse disc bulge and right lateral protrusion. (Doc. 27-27 at 6-8) Plaintiff argues that by declining to consider this new evidence and failing

7

to reopen the case, the Appeals Council failed to follow its own regulations, which state that the agency can reopen and revise decisions within 4 years upon a finding of good cause. 20 C.F.R. § 404.988(b). A finding of "good cause" to reopen a decision exists if new and material evidence if furnished. 20 C.F.R. § 404.989(a).

Plaintiff states that there is "good cause" to reopen the decision because "there was a fair possibility that a different result would have been reached" by the ALJ. He further states that this is a material issue that would have "provid[ed] further objective evidence of the cause of [Plaintiff's] leg pain."

This argument is without merit. Here, Plaintiff claimed disability based on diabetes mellitus, sleep apnea, hypertension, coronary artery disease, obesity, and asthma. Although the MRI results did show some degenerative changes that arguably could have caused leg pain, Plaintiff's degenerative disc changes were not before the ALJ. Nor was leg pain one of Plaintiff's alleged symptoms; at most, Plaintiff describes leg edema, which required him to keep his leg elevated. Therefore, whether Plaintiff did experience degenerative disc related pain was immaterial to Plaintiff's claimed impairments. Plaintiff did not show sufficient "good cause" for the Appeals Council to reopen the decision.

**2.**

Next, Plaintiff argues that the ALJ erred by failing to give controlling weight to Plaintiff treating physicians, Drs. Sakharova and Timmis.

Under the "Treating-Source Rule," the opinions of a claimant's treating physician are generally given more weight than those of non-treating and non-examining physicians because treating sources "are likely to be the medical professionals most

8

able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations…" 20 C.F.R § 404.1527(C)(2). Further, the opinion of a treating physician is given controlling weight when it is "well-supported by medically accepted clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id.*; *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 641, 544 (6th Cir. 2004).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must consider a number of factors in determining how much weight is appropriate. *See Rogers*, 486 F.3d at 242. These include "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting *Wilson*, 378 F.3d at 544). The ALJ must also provide "good reasons" for discounting a treating physician's opinion, which are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4). The purpose of this rule is twofold: "to let claimants understand the disposition of their cases," and to "ensure[] that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999).

Here, with respect to Dr. Timmis, the Commissioner is correct that Plaintiff has not identified any relevant opinion from Dr. Timmis that the ALJ improperly discounted, and none appear in the record. Although Dr. Timmis evaluated Plaintiff for the variety of conditions noted above, he did not provide an opinion relating to Plaintiff's ability to perform work-related activities. (Tr. at 438-86, 548-632, 949-952) The ALJ merely described Dr. Timmis' relevant findings related to Plaintiff's coronary heart disease and other conditions, with no indication that he discounted any of Dr. Timmis' findings or failed to give controlling weight to his opinions. Plaintiff has therefore not advanced any viable argument that the ALJ inappropriately discounted Dr. Timmis' opinion.

With respect to Dr. Sakharova, the ALJ stated that he was giving little weight to her opinion because she "imposes restrictions without basis and it appears that she just adopted [Plaintiff's] subjective complaints." (Tr. at 30) The ALJ stated that, "[f]or example, Dr. Sakharova restricted [Plaintiff] from exposure to all types of pollutants, but [Plaintiff's] pulmonary function study was normal." (*Id.* at 30-31) The ALJ's reasons are well-founded. Although Dr. Sakharova opined in April 2014 that Plaintiff would be severely limited in his ability to walk, stand, twist, and climb stairs, would require frequent unscheduled breaks, and must avoid exposure to all environmental irritants (Tr. at 946-44), that same month she reported that Plaintiff exercises three times a week by running, swimming, and walking for 30 minutes at a time. (Tr. at 954) Dr. Sakharova's report provides no other explanation for these inconsistent findings.

The ALJ properly assessed Dr. Sakharova's opinion. The ALJ stated that Dr. Sakharova's opinion "impose[d] restrictions without basis" and merely "adopted [Plaintiff's] subjective complaints." Thus, the ALJ indicated which factors were

10

dispositive in assessing the weight to be give Dr. Sakharova's opinion—namely, the supportability of Dr. Sakharova's opinion and the consistency of the opinion with the record as a whole. The ALJ's explanation also provides good reason why Dr. Sakharova's opinion should be provided little weight, including an example of why he found that Dr. Sakharova's opinion "impose[d] restrictions without basis" and merely "adopted [Plaintiff's] subjective complaints." The Court is therefore able to engage in a meaningful review of the ALJ's decision. Plaintiff's objection lacks merit.

### 3.

Next, Plaintiff objects to the MJ's conclusion that the ALJ's decision was supported by substantial evidence; however, Plaintiff does not clearly specify which of the ALJ's findings he is challenging. (Doc. 46 at 7) Plaintiff additionally objects to the MJ's conclusion regarding the ALJ's RFC determination. (Doc. 46 at 9) In the R&R, the MJ determined that there was substantial evidence in the record supporting the conclusion that Plaintiff retained the RFC to return to his past work as a vocational instructor. (Doc. 39 at 5) The Court will construe Plaintiff's objections as a challenge to this conclusion.

Here, substantial evidence exists in the record to support the ALJ's findings. Throughout the decision, the ALJ provided numerous reasons supporting his disability finding. The ALJ noted the findings of Plaintiff's treating physician Dr. Sakharova, who indicated that Plaintiff's diabetes was improving and that Plaintiff was exercising regularly. The ALJ noted the opinions of several other physicians who stated that Plaintiff was "able to walk and swim without significant symptoms." (Tr. at 555) As of June 2010, Plaintiff reported that, after making changes to his insulin delivery system,

his diabetes was better managed and he denied any significant symptoms of neuropathy. (Tr. at 816) In addition, the state consultative examination by Dr. Shaw suggests that Plaintiff could work up to 6 hours a day in a sitting position, with intermittent walking and while avoiding heights, machinery, and lifting more than ten pounds. Finally, the ALJ evaluated Plaintiff's credibility and determined that the medical evidence fails to support Plaintiff's alleged symptoms. (Tr. at 27, 29)

The ALJ has provided sufficient reasons for concluding that Plaintiff retains the RFC to return to his past light work as a vocational instructor, and there is substantial evidence supporting his conclusions.

**4.**

Next, Plaintiff argues that the ALJ erred by misstating and rejecting the opinion of Dr. Shaw, who Plaintiff says "gave a recommendation that [Plaintiff] receive benefits." Plaintiff further says that the ALJ erred by rejecting an RFC assessment by Dr. Shaw because it was unsigned.

Plaintiff's arguments lack merit. To begin, Dr. Shaw did not recommend that Plaintiff receive benefits; at most, she indicated that Plaintiff was somewhat limited in his ability to work. Further, Plaintiff does not explain how the ALJ "misstated" Dr. Shaw's opinion. (Doc. 46 at 10) To the extent Plaintiff seeks to challenge the weight given to Dr. Shaw's opinion, this too is without merit. Dr. Shaw was not a treating source and her opinions are not entitled to the controlling weight of a treating source. Further, the ALJ stated that he gave Dr. Shaw's opinion little weight because it relied too heavily on Plaintiff's subjective complaints, and that the limitations expressed by Dr. Shaw were not supported by the objective test results in the record. Contrary to

12

Plaintiff's allegations of a severe disabling condition, Dr. Shaw did not find that Plaintiff suffered from any severe neuropathy, and at most noted some "tingling and numbness" in his feet due to edema. The ALJ gave adequate reasons for his conclusions that Dr. Shaw's assessment of Plaintiff's ability to work was not supported by the records, but was rather based on Plaintiff's subjective complaints. The ALJ gave "good reasons" for discounting Dr. Shaw's opinion.

In addition, there is no indication that the unsigned RFC assessment was completed by Dr. Shaw; instead, it appears that assessment was unrelated to Dr. Shaw's opinion and completed by an unnamed medical consultant. (Tr. at 484-91) Further, the RFC assessment recited Dr. Shaw's conclusions regarding Plaintiff's work abilities and *rejected* them, stating: "Considering examining relationship, treatment relationship, supportability, consistency & specialization, this opinion is granted little weight as this is only [a] one time examining source." (Tr. at 490) Therefore, even if the ALJ erred in rejecting the RFC assessment because it was unsigned, its conclusions are not favorable to Plaintiff. Plaintiff's objection lacks merit.

**5.**

Next, Plaintiff objects to the ALJ's conclusion that his impairments do not constitute a severe impairment. Specifically, Plaintiff states that the ALJ erred by stating that Plaintiff's diabetes mellitus constitutes a "severe impairment," while finding that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity" required under 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Plaintiff's argument lacks merit. Although Plaintiff states that his conditions "significantly limit [his] ability to perform work activities," he does not explain how these

limitations would constitute a severe impairment. Nor does he state which of his conditions allegedly equals the severity required under these provisions. Plaintiff carries the "burden to prove that he has an impairment or combination of impairments . . . medically equal to one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. To do so, he must . . . present medical evidence that describes how his impairment is equivalent to a listed impairment." *Lusk v. Comm'r Soc. Sec.*, 106 F. App'x 405, 411 (6th Cir. 2004). Here, Plaintiff has failed to do so.

### 6.

Next, Plaintiff objects to the ALJ's conclusion that Plaintiff admitted during the hearing that he would return to Focus Hope.

At the hearing, Plaintiff stated that although he was laid off at Focus Hope for declining attendance, his manager indicated that he hoped to "rebuild" classes and that, if he did, he "was going to consider rehiring [Plaintiff]." Plaintiff stated, "And that's what I've been counting on that eventually Focus Hope will increase the classes . . ."

Based on the transcript, the ALJ appropriately summarized, "[Plaintiff stated that if he could be hired back as an instructor he would try to do it." (Tr. at 27) In the R&R, the MJ similarly stated that Plaintiff "admitted that he would have returned to teaching at Focus Hope upon request." These statements do not misstate Plaintiff's testimony during the administrative hearing. Plaintiff stated that he was "counting on" returning to Focus Hope, given the chance to do so. Plaintiff's objection lacks merit.

### 7.

Finally, Plaintiff objects to the ALJ's credibility determination. Specifically, Plaintiff argues that the ALJ did not consider the record as a whole when making his credibility determination.

In reaching his decision, the ALJ found that Plaintiff's claimed impairments were not fully credible, stating that "[t]he severity and limitations alleged by the claimant are not supported by the medical record as a whole." (Tr. at 27)

Although any credibility assessment made by an ALJ must be supported by substantial evidence in the record, the ALJ's findings regarding a claimant's credibility "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). However, an ALJ's determination on credibility is not immune from review. An ALJ's credibility determination must also contain "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7P, 1996 WL 374186 (July 2, 1996).

Here, the ALJ provided numerous reasons why he found that Plaintiff's claims were not credible. The ALJ determined that although Plaintiff claimed severe limitations related to his diabetic retinopathy and neuropathy, and stated that he has difficulty standing and walking, these allegations were not supported by the medical evidence. The ALJ noted that evidence related to Plaintiff's corrected vision "directly contradicts" his allegations. The ALJ further stated that, contrary to Plaintiff's allegations, the available evidence indicates Plaintiff's symptoms related neuropathy and diabetic

15

retinopathy are mild. The ALJ also noted the medical reports from Dr. Sakharova stating that Plaintiff was exercising by running, swimming, and walking three times a week for 30 minutes at a time, and up to 60 minutes a day. The ALJ also stated that the medical evidence showed consistent improvement and better control over his insulin. Finally, the ALJ noted that Plaintiff only received treatment once every three months—a "level of treatment [that] is considered maintenance and does not support the claimant's allegations of extreme limitations." (Tr. at 30) Given these extensive explanations based on the record as a whole, the ALJ's conclusions are well-supported.

The ALJ is tasked with observing a witness's demeanor and credibility, and the ALJ's findings related to Plaintiff's credibility are well founded and consistent with the record as a whole. The ALJ provided specific reasons for his credibility determination that were supported by substantial evidence in the record.

## IV. CONCLUSION

For the reasons stated above, the R&R has been adopted as the findings and conclusions of the Court. Plaintiff's motion for summary judgment has therefore been denied, and the Commissioner's motion for summary judgment granted. This case is DISMISSED.

SO ORDERED.

                                                  s/Avern Cohn
                                                  AVERN COHN
                                                  UNITED STATES DISTRICT JUDGE
Dated: May 29, 2015